TOM MERRITT, Appellant, v. GRANT MERRITT, Appellee.

**MALICIOUS PROSECUTION:** Termination of Prosecution—Security to Keep Peace. The order of a magistrate requiring a party to enter into an undertaking to keep the peace is a finality—a final termination of the proceedings for the purpose of an action for malicious prosecution. It follows that such order, unimpeached by any showing that it was induced by fraud or perjury, carries proof of the *existence* of probable cause.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

MAY 9, 1922.

ACTION at law for malicious prosecution. Directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*Voris & Haas,* for appellant.

*Crissman & Linville* and *Johnson & Donnelly,* for appellee.

FAVILLE, J.—The appellant and the appellee are distantly related. They reside about a mile apart. There had never been any difficulty between them prior to the transaction out of which this suit originated. Both parties are farmers. The appellant is a bachelor, and resides with a brother in a house located some distance from the public highway. On May 27, 1920, the appellant went from the house to the public highway, a distance of about 115 rods, to secure mail from a rural mail box. He took with him a small rifle, for the purpose of killing ground squirrels which were injuring his corn. He shot and killed three squirrels on the way, and, continuing on his course in the field, observed another squirrel, at which he claims he fired three times, without fatal effect. Had he been a better marksman, this litigation might have been averted. These three shots were aimed in an easterly direction. The appellee was at work on the highway east of the appellant at that time. All of

these shots missed the squirrel; likewise the appellee. Shortly thereafter, the appellee came from the road where he had been working with others, repairing the highway. There was some conversation between the parties in which the appellee told the appellant to be careful; that he and others were working on the road down there; and that appellant was shooting pretty close. The appellant replied that he did not know the parties were there. They walked together down to where the work was being done on the road, perhaps 15 rods away. The parties then parted, and the appellant went to the mail box and got his mail and went home. All of this transpired in the forenoon. In the afternoon, the appellee and those with him continued their work on the road, and appellant was working, harrowing, in an adjacent field. There was no further communication whatever between the parties, and two days later, the appellee filed an information before a justice of the peace, alleging that the appellant had threatened to commit a public offense, and that appellant had discharged a rifle "at and in the direction of" the appellee. The said information alleged:

"This affiant believes that, unless said defendant be placed under bonds to keep the peace, or taken into custody, he will carry his said threat into execution, and do violence to this affiant."

With the filing of this information, a warrant was issued by the justice of the peace, which was delivered to a constable, and appellant was arrested and brought before the justice. The cause was continued, and subsequently a hearing was had, some time in August following, at which both parties were present. At said hearing, the justice of the peace made an order in the following form:

"It appearing that a public offense triable on indictment has been committed, and that there is sufficient cause for believing the defendant guilty thereof, it is therefore adjudged and determined by the court that the defendant be held to answer for the offense charged, and that he be admitted to peace bail in the sum of $500; that, in default of bail, he be imprisoned in the jail of Linn County until he give such bail or be discharged according to law."

Just how much of this order was part of the printed form in the justice's docket, and how much was his own judicial determination, does not appear. The appellant furnished a peace bond in the sum of $500, with sureties, which bond was approved. The justice made a transcript of his record, and it, together with the papers in the case, was sent by him, under due certificate, to the clerk of the district court of Linn County. On the first day of the next term of court, appellant appeared before the court. It appears that the matter was continued by agreement of counsel, to accommodate the county attorney, who was busy with the grand jury. Subsequently, the matter appears to have been assigned for determination. The appellee failed to appear at the designated time, and the appellant was discharged and his bond exonerated. Immediately thereafter, this action was commenced. At the close of appellant's testimony, the appellee's motion for directed verdict was sustained.

I. The appellant offered in evidence the entry in the district court record of the proceedings in said court in said matter. Appellee's objection to the same was sustained. The offered record recites the appearance of the appellant herein, in person and by his attorney, and his demand for hearing. It also recites that the complainant in said proceedings did not appear, and that:

"The court, having heard the evidence, finds that the defendant has not threatened to commit a public offense, and he is, therefore, hereby discharged and his bond exonerated. The costs of this cause are hereby taxed to the complainant."

It is the appellant's contention that this entry in the district court records was properly admissible in evidence, and that it was an essential part of the appellant's case, in order to establish the fact that the litigation commenced against him had fully and finally terminated.

It is a fundamental proposition, which is not seriously questioned in this case, that, before an action for malicious prosecution will lie, the original proceedings, which it is claimed were so maliciously instigated, must be shown to have been finally terminated. *White v. International Text Book Co.,* 156 Iowa 210; *Pierce v. Doolittle,* 130 Iowa 333. Just what consti-

tutes the termination of an action for threatened breach of the peace, to meet the requirements of a subsequent suit for malicious prosecution, is the question in controversy at this point.

The action for the purpose of having a party placed under a peace bond, to prevent a threatened breach of the peace, was recognized under the common law, and has been made statutory in this state. Such a proceeding is not strictly criminal. *In re Petition of Mitchell*, 39 Kans. 762 (19 Pac. 1); *Weisselman v. State*, 95 Wis. 274 (70 N. W. 169); *State v. Sargent*, 74 Minn. 242 (76 N. W. 1129). It is said to be more in the nature of a criminal than a civil proceeding, and is sometimes referred to as being quasi criminal. *Ford v. State*, 96 Miss. 85 (50 So. 497); *Arnold v. State*, 92 Ind. 187. The proceedings are had under Chapter 4 of Title XXV of the Code.

Section 5105 provides for the filing of a complaint before a magistrate when any person has threatened to commit a public offense punishable by law. The magistrate may issue a warrant for the arrest of the person complained of, and the party, when arrested, is brought before the magistrate for hearing. Sections 5106 and 5107 provide for the proceedings before the magistrate after the arrest. Section 5108 provides for the discharge of the person complained of, if it appears to the magistrate that there is no just reason to fear the commission of the offense alleged to have been threatened. It also provides that the complainant may be ordered to pay the costs of the proceedings if the magistrate regards the complaint as unfounded and frivolous. This section provides also that, where judgment is entered against the complainant for the costs, if the proceeding is before a judge of the Supreme, district, or superior court, the papers, together with the order of the magistrate, shall be sent to the clerk of the district court, who shall file the same, and that execution may issue thereon.

In the event the party complained of is not discharged, the magistrate may require the person complained of to enter into an undertaking in such sum as the magistrate may require, as provided in Section 5109.

Section 5111 provides for the disposition of the papers in the proceedings, and Section 5114 provides for the appearance

before the district court of the person who has entered into the undertaking to keep the peace.

It is the contention of the appellant that the proceedings in the district court are, in effect, a continuance of the proceedings had before the magistrate, and that said proceedings are not finally terminated until action is had thereon in the district court.

Under our statute, Code Section 5097, "the term 'magistrate' includes any judge of the supreme, district, or superior court, throughout the state, and justices of the peace, mayors of cities and towns, judges of police or other city courts, and police and other special justices in cities and towns within their respective counties." The word "magistrate" is used in accordance with this definition in the chapter on "security to keep the peace." It is apparent that the proceedings for the purpose of placing the party under bond to keep the peace may be had before any one of the magistrates named in the statute. Where the magistrate upon the hearing determines that the party should be bound over to keep the peace, and security is given, then, under Section 5111, the magistrate returns all papers in the proceeding to the district court of the proper county, by the first day of the next term thereof. Up to this point, the action of the magistrate in requiring the party complained of to enter into an undertaking, is final.

Section 5114 provides that the person who has entered into the undertaking to keep the peace, as required by the magistrate, must appear on the first day of the next term of the district court of the county. Provision is made in said section for a forfeiture of the undertaking, if the party bound by the undertaking fails to so appear, unless his default is excused.

By Code Section 5115 it is provided that:

"If the principal in the undertaking appear, and the complainant does not appear, or if neither of the parties appear, the court shall enter an order discharging the undertaking."

This section also provides that, if both parties appear, the court shall hear the proof, and may require a new undertaking in such sum as the court may prescribe, and for any period not exceeding one year. It is also provided that judgment shall be

entered against the party held to keep the peace, for the costs of the proceedings, unless it is made to appear to the district court that the proceedings were instituted without probable cause, in which event the court may render judgment against the complainant for the costs. These statutes have come down from the Revision of 1860 without substantial change.

In *State v. Leathers*, 16 Iowa 406, we said:

"The object of binding the defendant to keep the peace until the next term of the court, is not that the court may review the proceedings of the examining magistrate, but to determine the question whether it is necessary to continue the defendant's undertaking. If the prosecuting witness does not desire it, he is discharged as a matter of course; but the court will presume that the magistrate acted rightly in the premises, and upon that presumption may properly tax the costs to the defendant, and more especially in this case, when the defendant waived the examination and voluntarily entered into bond to keep the peace. If, however, a re-examination should take place in court, at the instance of the prosecuting witness, with a view of continuing the defendant under bonds, and the complaint fails, or is found groundless, the costs made in the district court, in that event, will be taxed to the unsuccessful party."

It will be observed that the statute provides for two hearings under certain contingencies. The proceedings before the magistrate determine the question as to whether or not the party complained of should at that time be placed under bonds to keep the peace. If the decision of the magistrate is that the party should be required to enter into an undertaking to keep the peace, the statute fixes a time limit that the party shall be so held under bond. The requirement is that the party complained of shall enter into an undertaking "to abide the order of the district court of the county at the next term thereof, and in the meantime to keep the peace towards the people of the state."

Under Section 5114, a person who has entered into an undertaking to keep the peace, must appear on the first day of the next term of the district court. It is therefore apparent that the power of the magistrate is limited to requiring the party complained of to enter into an undertaking to keep the

peace for the period of time intervening between the date of said order and the next term of the district court of the county, regardless of whether that period of time be long or short. As stated in the *Leathers* case, supra:

"The object of binding the defendant to keep the peace until the next term of the court, is *not* that the court may review the proceedings of the examining magistrate, but to determine the question whether it is necessary to continue the defendant's undertaking."

The theory undoubtedly is that, where a party is required to give security to keep the peace, there shall be a fixed and definite limitation to the time that said undertaking shall be in force, and the legislature has provided that in all cases that period of time shall be until the next term of the district court of the county. When the district court convenes, provision is made in the statute that, if neither of the parties appear, the court shall enter an order discharging the undertaking. If the complainant appears, and the party bound by the undertaking does not appear, the court may forfeit the undertaking. If both parties appear, the court may then hear the proof and determine whether a *new* undertaking should be entered into, and if so, in what sum, and may fix any period, in the discretion of the court, for keeping the party under bond, not exceeding one year. This is not a review of the action of the examining magistrate, nor a retrial of the matters presented to him. By the express terms of the statute, if there is any trial whatsoever in the district court (and that is to be had only in the event that both parties appear), then the court does not determine whether the action of the magistrate was correct, but is required to hear the proofs of the situation as *then* presented, and may require a new undertaking in such sum as the court shall then prescribe, and for a period not exceeding one year.

In determining the construction to be put upon these statutes, we must bear in mind the purpose of these provisions of law. The proceedings are of ancient origin, and are a form of preventive justice by which persons who there is reasonable ground to suspect may be guilty of future misconduct against the public, shall be required to give assurance that the offense

that is apprehended shall not happen, by giving security to keep the peace toward the people of the state, and particularly toward the person against whom there is reason to 'fear that the offense may be committed. In cases of this character, perhaps more so than in any other, it is true that time is a great healer. The law recognized this, and has justly provided that the examining magistrate shall in every case fix the period of time that a person shall be placed under security to keep the peace to be until the first day of the next succeeding term of court. Our statute expressly provides the method of procedure on said day if neither party appears. This is probably the situation that most frequently occurs. The statute also provides what shall be done if either one or both of the parties appear.

Under certain conditions, the district court may hear the proofs of the parties, and determine whether any reason exists why the party complained of should be continued under bond. If such reason exists, the court may require a new bond to be given in a new amount and for a new period of time. It cannot reverse the action of the examining magistrate. Should the district court determine that the party complained of should enter into a new undertaking at said time, its order would have to be predicated upon the proof of the facts as they *then* existed. The question before the district court is not, "Has this man been properly placed under bonds by the examining magistrate?" It is rather the question, "Should this party now be held under bond upon the facts offered in proof in this court?"

The decision of the examining magistrate in the instant case was a decision that the appellant herein should enter into an undertaking to keep the peace. That decision by the magistrate on that question was final. Whether or not it could have been reviewed by appeal, in certiorari, or by other proceedings, is in no way involved in this case. The hearing before the magistrate determined the question as to whether or not, upon the facts as *then* existing, the appellant should be placed under security to keep the peace. The district court determined the separate and distinct question as to whether or not, upon the facts as they existed at *that* time, the appellant should then be placed under bond to keep the peace. It may well be that, upon

the proof offered, the district court might find that at said time there was no danger that the party complained of would commit any public offense. This would not be a finding, however, that such threatened danger did not exist at the time of the hearing before the examining magistrate. Cases may frequently arise where the examining magistrate may properly require the party complained of to execute an undertaking to keep the peace, and conditions so materially change thereafter that the district court may very properly hold that the party complained of should not, at the time of the hearing in the district court, be placed under a new bond. The action of both courts would be correct, and there would be no conflict between them. In many cases, weeks, and perhaps months, might intervene between the hearing before the examining magistrate and the convening of the district court. The "cooling time," frequently very desirable in cases of this character, has elapsed in such interval. Neither party appears in the district court, and, under the statute, the undertaking is discharged by order of court. Under such a situation, it could not well be held that the action instituted before the examining magistrate had "terminated favorably" to the party complained of in the district court, as the term is used in actions of malicious prosecution.

It is our conclusion that the order of the examining magistrate in a proceeding of this character is a finality, at least until legally set aside, and that the subsequent proceeding in the district court is in no proper sense a review of the merits of the original case presented before the examining magistrate. It is rather a determination of the question as to whether, upon the facts as they exist at the time of the hearing in the district court, the party complained of should be placed upon bond to keep the peace. It is true that Code Section 5115 provides that, under certain conditions, the district court may determine the question as to whether the proceedings were instituted without probable cause, for the purpose of determining the question of the taxation of costs. No such issue was presented, and no such finding made in the instant case. The record of the district court offered in evidence by the appellant contained no reference whatever to any such matter. The offered record only disclosed

that, upon a hearing in the district court, it found that at that time, and upon the proof *then* presented, the appellant should not be held under bond to keep the peace. There was not a finding that the proceedings were without probable cause originally.

It therefore follows that the record entry of said proceedings in the district court was inadmissible in the instant case for the purpose for which it was offered, and appellee's objections thereto were well taken, and were properly sustained.

II. It is argued that the court erred in sustaining the appellee's motion for directed verdict at the close of appellant's testimony. The motion presented two grounds: One that the evidence on the part of the plaintiff fails to show that the former proceeding had terminated in favor of the appellant. The other was that, upon the whole record, there was a failure of proof of want of probable cause. As a general rule, one of the essential requisites to be established in an action for malicious prosecution is that the suit complained of must be shown to have terminated favorably to the plaintiff. *White v. International Text Book Co.,* supra; *Pierce v. Doolittle,* supra; *Holden v. Merritt,* 92 Iowa 707. In the instant case, we hold that, for the purposes of this suit, the order of the justice of the peace was a termination of the original action. This order by the magistrate was unfavorable to the appellant.

It may be that, under some circumstances, even if there be a conviction in the main case, the plaintiff in an action for malicious prosecution thereof may still recover if he shows that the testimony upon which the conviction was had, was false and without foundation at law. See *White v. International Text Book Co.,* supra. However, such rule, if recognized, could not avail appellant in the instant case. There is no claim in the record that the decision of the magistrate was procured by perjury or fraud, or was without any foundation in law. It may have been ill-advised, erroneous, and rather nonjudicial. Such phenomena are not of infrequent occurrence. But in the instant case, there is no showing as to what evidence was produced before the magistrate, and no claim is made that the decision of the magistrate was induced by perjury or fraud. The appel-

lant's contention is that the decision of the magistrate was not final, and that the action of the district court was a final adjudication, and was favorable to the appellant.   As heretofore pointed out, the appellant is in error in this contention.   The decision of the examining magistrate was a final decision, for the purposes of this action.   It was unfavorable to the appellant; it has not been impeached for fraud or perjury; nor is it claimed that it was without foundation in law.   It stands as a verity.   It raises a presumption of probable cause which has not been overcome by any attempt to impeach its validity.   We are somewhat reluctantly forced to the conclusion that, upon the record, the presumption of probable cause has not been overcome by any proof that presented a question for the determination of the jury.

For the reasons pointed out, the action of the trial court in directing a verdict in behalf of the appellee was correct.   The judgment of the district court is—*Affirmed.*

Stevens, C. J., Evans and Arthur, JJ., concur.